**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

WILLIAM PENN APARTMENTS, L.P.,                    )
6500 DOWER HOUSE ROAD                              )
UPPER MARLBORO, MD 20773                           )
                                                  )
        Plaintiff,                                )
                                                  )
        v.                                        )
                                                  )   Civil Action No. _____
DISTRICT OF COLUMBIA COURT OF APPEALS             )
430 E STREET, N.W.                                )
WASHINGTON, DC 20001                              )
                                                  )
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA        )
500 INDIANA AVE, N.W.                             )
WASHINGTON, DC 20001                              )
                                                  )
THE HON. PHYLLIS D. THOMPSON                       )
ASSOCIATE JUDGE                                   )
DISTRICT OF COLUMBIA COURT OF APPEALS             )
        _in her official capacity_                )
430 E STREET, N.W.                                )
WASHINGTON, DC 20001                              )
                                                  )
THE HON. CORINNE A. BECKWITH                       )
ASSOCIATE JUDGE                                   )
DISTRICT OF COLUMBIA COURT OF APPEALS             )
        _in her official capacity_                )
430 E STREET, N.W.                                )
WASHINGTON, DC 20001                              )
                                                  )
THE HON. FRANK Q. NEBEKER                          )
SENIOR JUDGE                                      )
COURT OF APPEALS                                  )
        _in his official capacity_                )
430 E STREET, N.W.                                )
WASHINGTON, DC 20001                              )
                                                  )
THE HON. BROOK HEDGE                               )
SENIOR JUDGE                                      )
SUPERIOR COURT  OF THE DISTRICT OF COLUMBIA       )
        _in her official capacity_                )
500 INDIANA AVE, N.W.                             )
WASHINGTON, DC  20001                             )

|                                                              |     |
| ------------------------------------------------------------ | --- |
| THE HON. MICHAEL L. RANKIN                                    | )   |
| ASSOCIATE JUDGE                                              | )   |
| SUPERIOR COURT OF THE DISTRICT OF COLUMBIA                   | )   |
| *in his official capacity*                                   | )   |
| 500 INDIANA AVE, N.W.                                         | )   |
| WASHINGTON, DC  20001                                         | )   |
|                                                              | )   |
| JOHN S. SCHERLIS                                             | )   |
| 2853 ONTARIO ROAD, N.W., #305                               | )   |
| WASHINGTON, DC  20009                                         | )   |
|                                                              | )   |
| WILLIAM L. SCHERLIS                                          | )   |
| 5854 AYLESBORO AVE.                                          | )   |
| PITTSBURGH, PA 15217                                         | )   |
|                                                              | )   |
|                      Defendants.                             | )   |

## COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF

**WILLIAM PENN APARTMENTS, L.P.** (“WPA”), by and through its attorneys, brings

this Complaint against the District of Columbia Court of Appeals *et al.* and alleges as follows:

### PARTIES

1.    Plaintiff WPA is a limited partnership organized under the laws of the District of

Columbia, with its principal place of business in Upper Marlboro, Maryland.

2.    Defendants Hon. Phyllis D. Thompson (“Judge Thompson”) and Hon. Corinne A.

Beckwith (“Judge Beckwith”) are associate judges of the District of Columbia Court of Appeals.

They are sued in their official capacity.

3.    Defendant Hon. Frank Q. Nebeker (“Judge Nebeker”) is a senior judge of the

District of Columbia Court of Appeals.  He is sued in his official capacity.

4.    Defendant Hon. Brook Hedge (“Judge Hedge”) is a senior judge of the Superior

Court of the District of Columbia.  She is sued in her official capacity.

5.      Defendant Hon. Michael L. Rankin ("Judge Rankin") is an associate judge of the Superior Court of the District of Columbia.  He is sued in his official capacity.

6.      Defendant John S. Scherlis ("Scherlis") is a District of Columbia resident and Plaintiff in District of Columbia Superior Court Case No. 2008-CA-6144 B ("Damages Suit"), a lawsuit he and his brother William filed against WPA.  He is joined as an interested party as required by Fed. R. Civ. P. 19(a)(1).

7.      Defendant William L. Scherlis ("William") is a Pennsylvania resident and Plaintiff in the Damages Suit, which he and his brother John filed against WPA.  He is joined as an interested party as required by Fed. R. Civ. P. 19(a)(1).

8.      Defendant Superior Court of the District of Columbia ("Superior Court") is the trial court of general jurisdiction in the District of Columbia established by the District of Columbia Court Reorganization Act of 1970.

9.      Defendant District of Columbia Court of Appeals ("D.C. Court of Appeals") is the court of last resort, established by the District of Columbia Court Reorganization Act of 1970 to review, *inter alia*, all final orders, judgments, and specified interlocutory orders of the associate judges of the Superior Court of the District of Columbia.

## JURISDICTION

10.     This action is for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

11.     Pursuant to 28 U.S.C. § 1391(c), venue is proper in the District in which this Complaint is filed because the events and omissions giving rise to this claim have occurred and are occurring within the District of Columbia.

3

## NATURE OF THE CASE

12.     This case began as an ordinary landlord-tenant matter.  Its simple facts are now masked by a procedural morass resulting from a series of gross administrative and judicial errors by the Superior Court and D.C. Court of Appeals.  As a consequence, Plaintiff-landlord WPA[1] has been denied due process and is entitled to relief pursuant to 42 U.S.C. § 1983.

13.     Following all procedures required by District of Columbia Code, Rules, and case law, WPA evicted Defendant-tenant Scherlis in August 2005 for failure to pay rent on an apartment in a building owned by WPA.  The eviction took place pursuant to a judicially sanctioned Default Judgment and Writ of Restitution entered by Defendant Superior Court ("Landlord-Tenant Case").  The eviction was supervised by the U.S. Marshals Service.

14.     In August 2008, Scherlis and his brother co-Defendant William, only days before the three-year Statute of Limitations expired, filed a separate action in Superior Court the Damages Suit against WPA for $18,500,000, the amount of uninsured property they claimed had been in the apartment.  William, who claimed he had $1,000,000 of uninsured property stored at Scherlis' apartment, had no contractual or other relationship with WPA.  The Scherlises' Complaint made no mention of the valid Default Judgment and Writ of Restitution.

15.     D.C. Sup. Ct. R. Civ. P. 60 ("Rule 60"), the sole basis for overturning a judgment after expiration of the appeals period, states that filing the motion "does not affect the judgment's finality or suspend its operation."  D.C. case law holds that the right to recovery depends on a plaintiff's rights at the time suit is filed.

---

[1] Cafritz Company, which was involved in the matter as WPA's property manager, was also named a Defendant in the Damages Suit.  Cafritz ceased doing business as Property Manager for WPA on October 31, 2009.  Upon information and belief, it has ceased to do business in the District of Columbia.  Accordingly, only WPA brings this case.  Cafritz is named only where it is relevant to the facts.

16.     After WPA argued the extant Default Judgment was *res judicata* and thus a legal bar to adjudication of the Damages Suit, Judge Hedge, the presiding judge in the Damages Suit, in August 2009, permitted Scherlis— one year after filing the Damages Suit and the expiration of the Statute of Limitations, and four years after the eviction— to pursue a Rule 60(b)(4) Motion to Vacate the Default Judgment in the Landlord-Tenant Case.

17.     In May 2010, Judge Hedge heard testimony and considered evidence outside the record of the Landlord-Tenant Case.  Specifically, the evidence established that Scherlis, who had left D.C in February 2005 to reside at his property on Martha's Vineyard and remained there until the eviction, stopped paying rent in June 2005.  He was evicted August 23, 2005, after missing three consecutive payments.  He left no message about his absence or location after he ceased payments.  Scherlis blamed Lyme disease and/or running out of checks for non-payment.  Prior to eviction, WPA and Cafritz employees tried to reach Scherlis by various telephone numbers but the voice mailboxes were either full or there was no way to leave a message.  Based on this evidence, Judge Hedge vacated the Default Judgment *ab initio* on the ground WPA did not exercise due diligence to locate Scherlis.

18.     WPA appealed.  But a docketing error by the courtroom clerk made it appear that the appeal had been filed in the Damages Suit.  In fact, WPA had appealed the Order Vacating the Default Judgment *ab initio*, which had been entered in the Landlord-Tenant Case.  For over two years, various motions and orders ensued with the D.C. Court of Appeals repeatedly citing the erroneous docketing number of the Damages Suit in denying appellate review.

19.     On September 9, 2010, the Court of Appeals remanded the case, stating "if any party remains aggrieved, then they may file a notice of appeal."

20.     On remand, Judge Hedge heard both Parties Summary Judgment Motions in the

Damages Suit on January 12, 2011.  Over 14 months later, on March 23, 2012, Judge Hedge

relying on the same rationale as her Order Vacating the Default Judgment *ab initio* in the

Landlord-Tenant Case granted the Scherlises Motion for Partial Summary Judgment,

awarding them judgment as a matter of law for wrongful eviction, trespass, conversion, and

trespass to chattels.

21.     D.C. Code authorizes two avenues of appeal relevant here.  First, D.C. Code § 11-

721(a)(1) grants a right of appeal of any final order.  The order vacating the Default Judgment *ab*

*initio* in the Landlord-Tenant Case was a final order subject to appeal under this provision.

Second, D.C. Code § 11-721(d) provides the D.C. Court of Appeals with discretion to accept an

appeal if the trial court states the matter "involves a controlling question of law as to which there

is substantial ground for a difference of opinion . . . ."  Judge Hedge included such a statement in

her Summary Judgment Decision in the Damages Suit.

22.     WPA appealed as a matter of right under § 11-721(a)(1) the May 2010 Order

Vacating the Default Judgment *ab initio*.  But Defendant D.C. Court of Appeals panel refused to

permit the appeal to go forward on the erroneous understanding it had been filed in the Damages

Suit, even though WPA had included the Landlord-Tenant Case number in its filing.  The same

D.C. Court of Appeals panel denied WPA s Motion for Reconsideration, again citing the

Damages Suit, even though WPA had used the Landlord-Tenant Case number in its filing.

23.     Citing Judge Hedge s language comporting with that rule s requirement, WPA

also filed under § 11-721(d) an "Application for Review" of the March 2012 Summary Judgment

ruling in the Damages Suit.  The D.C. Court of Appeals denied the Application April 30, 2012.

24.     In May 2012, Defendant Superior Court Judge Rankin, to whom the Damages Suit was transferred in April 2012, ordered discovery to proceed for a yet unscheduled trial on damages.

25.     By refusing to hear the appeal of a final order, which is a matter of right under D.C. law, and forcing WPA to trial, the D.C. Court of Appeals denied WPA its property interest in the finality of the Landlord-Tenant Default Judgment, and subjected it to expensive litigation costs and putative monetary loss of $18,500,000, all without due process of law.  By proceeding in the Damages Suit, Superior Court, Judge Rankin, and the Scherlis Defendants have continued the violation of WPA's due process rights.

## FACTUAL BASIS

### The Eviction

26.     WPA owns a building located at 2231 California St., NW, Washington DC 20008.

27.     Scherlis, a Harvard graduate and former researcher at the University of Cambridge, in November 1994, entered into a lease agreement with WPA for Apartment #202, in the building located at 2231 California St., NW, Washington D.C. 20008.  A few months later (February 1995), Scherlis moved to a larger, two bedroom apartment, #203, in the same building. In January 2004, Scherlis leased a second apartment, #806, a one bedroom in the same building, where he moved some possessions including his bed.  Scherlis signed written lease agreements for both #806 and #203, which were month-to-month, with the rent due by the 1st of each and every month.

28.     Scherlis also owned— and still owns— a co-op in Washington D.C. at 2853 Ontario Road, NW, and has co-ownership in a family home in the Martha's Vineyard area (specifically West Tisbury, Massachusetts) as well as a second home there.

29.     District of Columbia law prohibits self-help evictions.  D.C. Code, case law, and custom require that before a tenant can be evicted the landlord must follow specific procedures, including serving the tenant with the Complaint for Possession and Summons for Appearance.

30.     Personal service is not required but preferred.  Therefore, the process server must attempt to deliver the documents to the tenant in person.  But D.C. law also recognizes the reality that a tenant may purposely avoid service or be absent from his residence or the District of Columbia at the time service is attempted.  Thus, specific rules have been developed to ensure due process notice of an impending eviction.  The process server must go to the tenant apartmentô twice, on different days and at different times.  One of those times must be outside normal working hours.  If no one responds after two attempts, the Complaint and Summons must be posted on the tenant door.

31.     The Complaint and Summons must also be mailed first class to the tenant apartment.

32.     The process server must aver on a specific form filed in Superior Court that he fulfilled all these requirements.  Only after the form is reviewed by a Landlord-Tenant clerk and supervised by a judge, may a court hearing date be calendared.  If the delinquent tenant does not appear for the hearing and the landlord does, the court may enter a Default Judgment.

33.     Yet another first class mailing to the tenant is required: a form that specifies the exact amount due to retain possession of the property.  At any time prior to the U.S. Marshals Serviceøs supervision of the eviction, the tenant can pay the amount due and the process is stopped.  This so-called *Trans-lux* Rule,[2] applies even if a U.S. Marshal is on the premises and items are being removed.

---

[2] *Trans-lux Radio City v. Service Parking Corp.*, 54 A.2d 144 (D.C. 1947).

34.     D.C. law requires the landlord to take additional action, beyond service-by-posting, only when the landlord has <u>actual</u> knowledge that a delinquent tenant is outside the District, unlikely to receive notice of the landlord's suit for possession, and the tenant has provided the landlord with <u>specific</u> information to contact him.  Then the landlord is required to use due diligence to provide the tenant with notice of the landlord's suit seeking possession of the rental unit.  *See Edelhoff v. Folger Shakespeare*, 884 A.2 643 (D.C. 2005) (Landlord failed to exercise due diligence where there was evidence the tenant had provided <u>written</u> notice of her intent to leave the country and the <u>phone number</u> to reach her, but the landlord did not bother to call it and filed a Complaint requesting the court to issue a Summons a mere few weeks later.)

35.     Scherlis was sporadic about timely payment of rent.  As early as August 14, 1998, WPA sent him written notice for #203 that his rent was late and that WPA has "never" intended to "extend that date."  The notice also stated future late payments would be assessed a late fee. WPA sent another written late notice of rent on June 19, 2000.

36.     In September 2003, Scherlis was again late paying rent for #203.  Cafritz, WPA's property management company, filed a Complaint and Superior Court on September 16 issued a Summons, which were served by posting and mailing.  The case was dismissed October 15 because payment had been made.

37.     In October 2004, Scherlis was again late paying rent, this time for both #203 and the then-recently leased additional apartment #806.  Cafritz filed a Complaint and Superior Court on October 18 issued a Summons, which were served by posting and mailing.  The case was dismissed November 22 because payment had been made.

38.     In November 2004, Scherlis was again late paying rent for Apt. #203.  Cafritz filed a Complaint and Superior Court on November 16 issued a Summons, which were served by posting and mailing.  The case was dismissed December 20 because payment had been made.

39.     In December 2004, Scherlis was again late paying rent for both apartments. Cafritz filed a Complaint and Superior Court on December 16 issued a Summons, which were served by posting and mailing. The case was dismissed January 24, 2005 because payment had been made.

40.     During December 2004, Scherlis travelled to his Martha's Vineyard home for "some weeks" and returned to Washington D.C.

41.     In January 2005, Scherlis was again late paying rent for both apartments.  Cafritz filed a Complaint and Superior Court on January 14 issued a Summons, which were served by posting and mailing.  The case was dismissed February 28 because payment had been made.

42.     Sometime in February 2005, Scherlis left again for a stay at his home in Martha's Vineyard.  He testified at his July 2009 deposition that he "believe[d] he spoke with Mona" Lisa Ringgold, WPA Resident Manager at the time, "concerning [his] planned absence," which he "anticipated might be a month or so."[3]

43.     Some WPA maintenance employees were aware that at various times and for varied lengths of time Scherlis would travel or spend time in the Martha's Vineyard area.  However, no employee testified to being aware that Scherlis was absent from D.C. or knowing any specifics about his location during the relevant time period.

44.     Scherlis had one telephone conversation in early May 2005 with Ringgold, who he testified called "to check up on [him]," but there was not "anything about the rent discussed."

---

[3] He later testified in response to Judge Hedge's questioning at an evidentiary hearing that he "did not know if there was a discussion about my leaving town" with Ringgold prior to his departure.  Ringgold testified, "I don't remember him ever giving me any information about his whereabouts" during her tenure with WPA.

Ringgold testified she did not specifically recall their conversation but speculated it may have been õmaybe a maintenance problem.ö In any event, the call preceded the June non-payment that resulted in the Default Judgment.

45.     In March 2005, Scherlis was again late paying rent for both apartments. Cafritz filed a Complaint and Superior Court on March 16 issued a Summons, which were served by posting and mailing. The case was dismissed April 21 because payment had been made.

46.     In April 2005, Scherlis was again late paying rent for both apartments. Cafritz filed a Complaint and Superior Court on April 15 issued a Summons, which were served by posting and mailing. The case was dismissed May 17 because payment had been made.

47.     In May 2005, Scherlis was again late paying rent for both apartments. Cafritz filed a Complaint and Superior Court on May 11 issued a Summons, which were served by posting and mailing. The case was dismissed June 8 because payment had been made.

48.     In June 2005, Scherlis was again late paying rent for both apartments. On June 20, Cafritz filed a Complaint for non-payment and possession of both apartments. The Landlord-Tenant Branch of Superior Court issued a Summons for Scherlis to appear. During the previous eight months when he had received 15 separate postings, Scherlis became knowledgeable of the process and consequences for non-payment. Unlike the previous occasions, however, Scherlis did not pay the overdue rent and penalty. Nor did he contact or attempt to contact anyone at WPA or Cafritz to inform them of his whereabouts or when he would pay the overdue rent.

49.     In July 2005, Scherlis again did not pay rent for both apartments. Nor did he contact or attempt to contact anyone at WPA or Cafritz to inform them of his whereabouts or when he would pay the overdue rent.

50. In July 2005, Jerry Criswell, a process server under contract to Cafritz, followed the same D.C. Code requirements for eviction that he had followed for Scherlisøprevious 15 late rent payments.

51. On Wednesday, July 6, 2005 at 8:40 a.m., Criswell attempted personal service of the June 20 Complaint and Summons by knocking on the door of Apt. #203. There was no response.

52. Criswell again attempted service for Apt. #203 on Friday, July 8, 2005 at 7:51p.m. by knocking on the door. When there was no response, he posted copies of the Complaint and Summons on the door.

53. Pursuant to D.C. Code §16-1502 and Superior Court Landlord and Tenant Branch Rule 4, Criswell sent copies of the Complaint and Summons to Scherlis at Apt. #203 via first class mail on Monday, July 11, 2005.

54. When Scherlis failed to appear for the hearing and counsel for Cafritz appeared, Superior Court on July 20, 2005 entered a Default Judgment. Also on July 20, Superior Courtô pursuant to judicial requirementô sent the *Trans-lux* form stating the amount due to retain possession to Scherlis at Apt. #203 via first class mail.

55. On July 27, 2005, Superior Court issued a Writ of Restitution, which was forwarded to the U.S. Marshals Service for scheduling an eviction. Upon information and belief, in accordance with its procedures, the U.S. Marshals Service mailed a copy of the Writ to Apt. #203.

56. On August 5, 2005, Scherlis once again had not paid rent for both apartments.

57. During the three months Scherlis failed to pay rent he left no message with WPA or Cafritz about payment, even though he had their contact numbers.

12

58.     In his July 2009 deposition, Scherlisô who admitted he was aware he had not paid rent for three monthsô claimed to have called the WPA office on the Friday prior to the fourth week of August 2005 (August 19) but could not reach anyone and õit was not possible to leave a voice message.ö

59.     Yet, at the evidentiary hearing on May 18, 2010, Scherlis testified he called õa couple of timesö but that at õanother timeö [date unspecified], õI just chose not to leave a message because I thought I would ring back, call back.ö

60.     Throughout the seven months he resided in Massachusetts, Scherlis made no arrangement to have his mail forwarded to his Marthaøs Vineyard residence.

61.     The U.S. Marshals Service set Apt. #203øs eviction for Tuesday, August 23, 2005.[4]

62.     Prior to August 23, WPA and Cafritz employees attempted to contact Scherlis, even though they had no specific information about his location or the best way to reach him.

63.     Although Scherlis claimed to have written his cell phone number and his Massachusetts landline number on $8\frac{1}{2}$ö x 11ö paper with his multiple late paid checks (February through May), there is no corroborating evidence he did so.  WPAøs file for Apt. #203 contained no such documents and WPA site manager Ringgold did not õrecall receiving any documents, information, or notes from Mr. Scherlisö in the mail.

64.     Nevertheless, Donald Godfrey, Cafritz Regional Manager in 2005, recalls calling at least one and perhaps two phone numbers.  The numbers were provided him by Jackie Ford, the WPA site manager in August 2005.  He recalls Ford telling him one of the numbers was a cell phone, which he called.  However, there was a message that the voicemail was full.  Godfrey

---

[4] Apt. #806, which had received the same notices by postings and the same required first class mailings, was not scheduled for eviction although a Writ of Restitution was also provided for it to the U.S. Marshals Service.

testified: "I took it upon myself to try to contact Mr. Scherlis. I called what I believe was his cell phone number. And I may well have called another number. If I was -- if I was given a number, I called it. I do know I called one. And I believe that the mailbox was full, so I couldn't leave a message, I couldn't contact him. I tried to do so, I wasn't able to."

65.     George Landfried, a maintenance and construction employee at WPA who worked for James Parreco & Son, also attempted to contact Scherlis. On August 22, 2005, he called Scherlis at his other D.C. address, the co-op on Ontario Street, but received a message that the mail box "was full not accepting anything else." Also, that evening, Landfried searched WhitePages.com on his home computer and found two numbers for people named "Scherlis," one in Baltimore and the other in Washington D.C. He tried both, including the Baltimore number twice, but received no answer. He then located a number for a "Scherlis" in West Tisbury, Massachusetts, which he tried but received no answer.

66.     According to Landfried, Jackie Ford, who has not been located since she left WPA as an employee in December 2005, told him she "had been unable to reach [Scherlis] at any of the numbers they had for him . . . ."

67.     When no one could reach Scherlis, the eviction, pursuant to a valid Superior Court Default Judgment Order, proceeded on August 23, 2005 under the direction of the U.S. Marshals Service. The contents of Apt. #203 were placed on public space in front of the building, as required by the U.S. Marshal Service.

68.     Scherlis learned of his eviction on August 24, 2005 and returned to D.C. the next day. He continued to occupy Apt. #806, where he resided until 2011.

**The Damages Suit**

69.     For almost three years, Scherlis did nothing about the eviction.  Only days before the Statute of Limitations expired, on August 19, 2008 (amended August 20, 2008), Scherlis and William filed the Damages Suit in Superior Court, a five count Complaint against WPA and Cafritz, alleging wrongful eviction, negligence, conversion, breach of good faith, and trespass, and praying for damages in the total amount of $18,500,000.

70.     The Damages Suit Complaint was designated # 2008-CA-6144 B by Superior Court and assigned to Judge Hedge.

71.     William alleged that he also had property stored at Apt. #203, which had an õestimated worth of at least $1,000,000.ö  He had no contractual or other type of relationship with WPA or Cafritz, and never informed WPA of this stored property.

72.     Neither Scherlis nor William had insured their claimed multi-million dollar possessions.

73.     The Amended Complaint alleged, *inter alia*, that Scherlis had contracted Lyme disease, giving him õbrain fog,ö which was a õpartial[]ö reason he had not paid rent from June through August 2005.

74.     Neither the Complaint nor Amended Complaint mentioned that Scherlis was evicted only after Superior Court had issued a Default Judgment and Writ of Restitution, making it falsely appear that the prohibited self-help was utilized by WPA.

**The Motion to Vacate the Default Judgment under Rule 60(b)(4)**

75.     One year after filing the Damages Suit and four years after the eviction, and only after WPA had argued the 2005 Default Judgment was *res judicata* barring the Damages Suit as a matter of law, Scherlis on August 17, 2009 filed a Motion to Vacate the Default Judgment in

the Landlord-Tenant Case as void pursuant to Rule 60(b)(4).  Citing *Edelhoff*, Scherlis claimed

that WPA and Cafritz should have been more "diligent and conscientious" about contacting him.

76.     The next day, the Scherlises filed in the Damages Suit a Motion to Consolidate

the Damages Suit and the Landlord-Tenant Case, the latter including the Motion to Vacate the

Default Judgment and all relevant pleadings and documents.

77.     D.C. Sup. Ct. R. Civ. P. 42(a) requires: "Any motion to consolidate two or more

civil actions shall be decided by the judge on whose calendar appears the <u>oldest</u> assigned case

covered by the motion." (Emphasis added.)  Thus, the Motion to Consolidate should have been

filed and decided in the Landlord-Tenant Branch of Superior Court.

78.     The Scherlises also requested that the hearing on the Motion to Vacate the Default

Judgment be considered the "trial on liability" in the Damages Suit.

79.     WPA opposed the Motion to Consolidate but, in the interest of judicial economy,

did not oppose Judge Hedge's deciding the Motion to Vacate.  Relying on *Threatt v. Winston*,

907 A.2d 780 (D.C. 2006), WPA opposed both Scherlis' Motion to Vacate and the Scherlises'

request that the Motion to Vacate hearing also be the "trial on liability."

80.     *Threatt* held that Rule 60 provides the sole bases for attacking Default Judgments

after the time for appeal has run.  *Id*. at 783.  Under Rule 60(b)(4), a Judgment is "void" only on

a showing that "the rendering court was powerless to enter" the judgment.  *Id*.  Typically,

therefore, a judgment may be found void only if the court that entered it had no jurisdiction over

the parties or the subject matter, or if the court's action was otherwise so arbitrary as to violate

due process of law.

81.     *Threatt* held that the Rule 60(b)(4) Motion to Vacate must be decided <u>prior</u> to filing a claim for damages.  "So long as [the Default Judgment] remains undisturbed, the prior judgment precludes Threatt's new claim." *Id.* at 782 n. 3.

82.     Although Rule 60(b)(4) does not establish a specific time limit,[5] it requires the motion be filed within a "reasonable time."

83.     Significantly, Rule 60(b)(4) states that merely filing a motion "does not affect the judgment's finality or suspend its operation."

84.     When the Scherlises filed the Damages Suit, Scherlis had taken no action to challenge the Default Judgment in the Landlord-Tenant Case.  Therefore, there could be no cause of action in the Damages Suit based on *res judicata*.  A plaintiff's right to recover depends upon his right at the inception of the suit.

85.     In August 2009, when Scherlis finally filed the Rule 60(b)(4) Motion four years after the eviction, the three-year Statute of Limitations for the Damages Suit had long since expired.

86.     Yet, Judge Hedge: a) "consolidated" two cases, when one of them, the Damages Suit, failed to state a cause of action because of the extant Default Judgment; and b) ignored the Statute of Limitations by allowing Scherlis to proceed with his Damages Suit past the Statute of Limitations expiration date when the Default Judgment was still valid.

### *Threatt* Analysis

87.     *Threatt* was adamant and specific in addressing the process to be utilized when attacking a Default Judgment other than by direct appeal.  Citing both D.C. and federal precedent, *Threatt* stated that the "power of a trial court to vacate or otherwise relieve a party

---

[5] There is a one year Statute of Limitations for Rule 60(b)(1), (2), and (3), which list other bases for relief such as fraud or newly discovered evidence.

from a prior judgment or order, [except for clerical errors] is circumscribed by Rule 60(b).ö *Id.* at 786 n. 11.

88.     After tenant Threatt failed to pay rent, landlord Winston filed a suit for possession, which was served    like Scherlis    by posting and mailing.  When Threatt failed to appear, a Default Judgment was entered; the landlord obtained a Writ of Restitution; and a month later, under supervision of the United States Marshals Service, Threatt was evicted    all facts that are identical here.

89.     Threattô  like Scherlisô  did not seek to vacate the Default Judgment nor did he appeal.  Rather, he filed suit against Winston seeking damages of $1.5 million dollars.

90.     Threattøs Complaintô  like the Scherlisesöô  did not mention either the Default Judgment or Writ of Restitution.

91.     Only after a jury was impaneled did the trial court learn there had been a Default Judgment.  The court *sua sponte* dismissed Threattøs Complaint, holding it was öbarred under the doctrine of *res judicata*/collateral estoppel.ö  *Id.* at 782.

92.     The D.C. Court of Appeals affirmed, stating öThreatt could attack the Default Judgment <u>only</u> by filing a Motion to Vacate pursuant to Superior Court Civil Rule 60(b)(4)ö (emphasis added) or by filing an independent suit authorized by Rule 60, which is öavailable <u>only</u> to prevent a grave miscarriage of justice,ö (emphasis added) or if it were ömanifestly unconscionableö to allow the judgment to stand, and there was  öno fault or negligenceö by the moving party.  *Id.* at 785.

93.     *Threatt* observed that övoidö under Rule 60(b)(4) is to be önarrowly construed,ö limited to situations where öthe rendering court was powerless to enter it.ö *Id.* at 783.

94.     The sole difference between *Threatt* and the instant case is the additional fact that the Statute of Limitations for the Damages Suit expired <u>before</u> Scherlis sought to vacate the Default Judgment in the Landlord-Tenant Case, which should not inure to the benefit of the Scherlises, but rather be a further bar to any decision contrary to WPA.

95.     Notwithstanding this specific and recent precedent, and WPA's full compliance with the plethora of procedures required by D.C. landlord-tenant law, Judge Hedge ruled from the bench on November 20, 2009 that there were two issues in the case: 1) whether the judgment was void based on whether service was proper (not on whether "the rendering court was powerless to enter it"), and 2) damages, which she recognized as a jury issue.  "So, they're consolidated but they're consolidated only with the first issue being addressed first."

96.     Judge Hedge characterized WPA's opposition to consolidation as "form over substance."

97.     Judge Hedge recognized the Scherlises' Complaint "was obviously done wrong" but expressed concern they were running up against the Statute of Limitations when they filed.

**Rule 60(b)(4) Evidentiary Hearing**

98.     Seven months later (May 18, 19, and 24, 2010), Judge Hedge held an evidentiary hearing to decide the Motion to Vacate the Default Judgment in the Landlord-Tenant Case, which was based on Scherlis' claim that service was improper.

99.     In testimony, Scherlis added to his Lyme disease justification for not paying rent nor contacting WPA or Cafritz for three consecutive months the fact that, although he "certainly . . . had the means to do so with respect to funds and so forth available," he had "run out of checks as of the end of May, I guess, for one account and early June for another."

100.   Scherlis also had an account with Legg Mason, his asset management company with offices in Baltimore, that öheld and traded shares and of individual stocks, also of mutual funds and that sort of thingö for him.

101.   Scherlis also paid other significant expenses by check during that time period, including his D.C. co-op mortgage and utilities.  He was in frequent contact with friends in the District during this period, but did not request any of them to pay his rent or forward his mail.

102.   Judge Hedge, ignoring the various attempts by WPA and Cafritz to contact Scherlis by service and first class mail at his apartments, and the attempts to reach him by telephone (which were thwarted by full voice mailboxes or no answer with no means to leave a message) issued an Order voiding *ab initio* the Default Judgment on the basis that WPA failed to use due diligence to contact Scherlis.

103.   Judge Hedge credited Scherlisø testimony that he had provided his phone numbers to WPA in his mailed late checks, even though he had produced no corroborating evidence.  In fact, Ringgold could not recall ever having received such information.  Sans any evidentiary basis, Judge Hedge found that Ringgold had actually received such information but not given it significance, and blamed ömanagementö for her lack of training.

104.   The only evidence of Scherlisøø öbrain fogö Lyme disease was his testimony that he was suffering from it in the months preceding his eviction, notwithstanding that he had emailed a friend in early June 2005 that he was öon the mendö and imminently returning to D.C.

105.   To date, Scherlis has failed to produce any evidence, such as medical reports or diagnostic test results, confirming he was affected by Lyme disease during the relevant period of June to August 2005.

106.    Judge Hedge did not confine the evidence in the three-day Motion to Vacate hearing to a review of the Landlord-Tenant Case court record as it existed on July 20, 2005, but relied on extrinsic evidence in finding the Default Judgment void *ab initio*.

107.    Controlling D.C. precedent holds that a Default Judgment may be found void *ab initio* (as opposed to õvoidableö) when lack of jurisdiction can be determined from the record without reliance on extrinsic evidence.

108.    Judge Hedge ignored controlling case law by ruling to vacate the Default Judgment *ab initio*.

109.    WPA had a due process right for Judge Hedge to comply with the Statute of Limitations and controlling D.C. case law regarding vacating valid Default Judgments.  Her decisions contrary to controlling law subjected WPA to loss of its property interest in the Default Judgment, and to potential liability, resulting in WPAøs considerable litigation costs and a putative loss of an $18,500,000 jury award.

**WPA's Appeal of the Order to Vacate Default Judgment in Landlord-Tenant Case**

110.    On June 23, 2010, WPA timely filed a Notice of Appeal of Judge Hedgeøs May 24, 2010 Order Vacating the Default Judgment *ab initio*, which was assigned Appeal No. 10-CV-814.

111.    On June 30, 2010, WPA moved to revive its Summary Judgment Motion in the Damages Suit,[6] which had been held in abeyance by Judge Hedge until she ruled on the Motion to Vacate in the Landlord-Tenant Case.  The Scherlises also had pending a Partial Summary Judgment Motion, arguing that the Default Judgment was void *ab initio* and therefore the eviction was illegal as a matter of law.

---

[6] Relying on *Threatt*, the motion argued that because the Default Judgment in the Landlord-Tenant Case was extant at the time the Damages Suit was filed, the action was *res judicata* and there could not have been a valid filing.

112.    The court again demurred, this time because it was unclear õwhether [it] had jurisdiction to ruleö given the pending Notice of Appeal.

113.    On July 8, 2010, Judge Hedge issued a Notice to Counsel that there were multiple õerrors in the docket entryö for the WPA Appeal.  The May 24, 2010 Order Vacating the Default Judgment, among other errors, had been incorrectly docketed in the Damages Suit.  Such error began the procedural nightmare.

114.    Because the courtroom clerk had erroneously recorded the Order Vacating the Default Judgment in the Landlord-Tenant Case as an Order in the Damages Suit, WPA cited that number when filing its June 23, 2010 Notice of Appeal.

115.    Judge Hedge acknowledged that her Order Vacating the Default Judgment should have been docketed in the Landlord-Tenant Case.

116.    Judge Hedge clarified that the õconsolidationö was limited to the hearing on the Motion to Vacate Default Judgment, specifically whether Scherlis had been properly served.

117.    Judge Hedge also wrote she did not correct the docketing error because it could have affected the timeliness of WPAøs Notice of Appeal.

118.    In an attempt to cure the docketing error, WPA, on July 9, 2010, filed a second Notice of Appeal of Judge Hedgeøs Vacatur of the of the Landlord-Tenant Case, citing 2005 LTB 19938, which was assigned Appeal No. 10-CV-866.

119.    On August 2, 2010, in a further attempt to clarify the docketing error because the D.C. Court of Appeals now had two differently numbered appeals before it raising identical issues, and because the trial court was unsure if she could rule on the partiesø Summary Judgment Motions, WPA filed a Motion to Consolidate and Stay the Appeal, stating:

> The two appeals seek the review of the same rulings by Judge Hedge, and involve the same questions of law and fact . . . . [T]he only reason the first Notice of

Appeal was filed in the Civil Case was because of the incorrect docketing of the Order to Vacate in that matter.

120.    The request for a Stay was based on judicial economy because a favorable ruling on WPA's Summary Judgment Motion in the Damages Suit would moot the appeal.

121.    On the very same day, August 2, 2010, a panel of the D.C. Court of Appeals issued a Show Cause Order, citing only the June 23, 2010 Notice of Appeal— 10-CV-814— and referencing only the Damages Suit— 2008 CA 6144 B— stating: "On consideration of the notice of appeal filed June 23, 2010, taken from the May 24, 2010, <u>denial</u> of the Motion to Vacate…" (Emphasis added.)  The language is in error as the trial court had <u>granted</u> the Motion to Vacate.

122.    WPA submitted its Response to the August 2, 2010 Show Cause Order on August 17, 2010, detailing the relationship (and differences) between the Damages Suit and the Landlord-Tenant Case.  But counsel did not receive a return stamped copy.

123.    On September 9, 2010, the D. C. Court of Appeals, via the only panel correctly citing both the Damages Suit and Landlord-Tenant Case, discharged the August 2, 2010 Show Cause Order, but *sua sponte* ordered the case "remanded to the trial court for further action and upon the entry of the order that <u>resolves all matters in the consolidation, if any party remains aggrieved, then they may file a notice of appeal.</u>" (Emphasis added.)  Since Judge Hedge's "consolidation" covered only the Motion to Vacate the Default Judgment in the Landlord-Tenant Case, that issue   when decided   would be appealable.

124.    WPA's counsel contacted the D.C. Court of Appeals because he realized upon receipt of the September 9, 2010 ruling that he had never received a date-stamped copy of the Response to the Show Cause Order.  The clerk said the docket had no entry for WPA's Response.

23

**Judge Hedge's Granting Scherlises' Motion for Partial Summary Judgment**

125.    On remand four months later, Judge Hedge, on January 12, <u>2011</u>, heard oral argument on the Summary Judgment Motions in the Damages Suit.

126.    Over one year later, on March 23, <u>2012</u>, Judge Hedge denied WPA's Motion for Summary Judgment and granted the Scherlises' Motion for Partial Summary Judgment.  She relied on *Edelhoff*, notwithstanding that: its factual basis specifically involved <u>written</u> notice of contact information that the landlord had completely ignored and sought re-possession after a few weeks, not three months; was filed prior to eviction; was filed in Landlord-Tenant court as a direct attack on the Default Judgment; and was not an action for damages years after the event.

127.    Judge Hedge found WPA liable for damages on the basis that "Mr. Scherlis was never legally dispossessed of his interest in Apt. #203 because the judgment granting Defendants [WPA/Cafritz] possession was void.  Defendants, therefore, had no authority to enter or allow entry into Mr. Scherlis' apartment to evict him."

128.    Judge Hedge also ruled that WPA was liable to William, finding "[t]he combined actions of the Defendants (landlord and agent of the landlord) interfered with Mr. Scherlis' possession of Apt. #203 and <u>both</u> Plaintiffs' exercise of possession/ownership of their chattels," (emphasis added) even though William had no contractual or other relationship with WPA or Cafritz, and had not provided WPA any notice such property was on the premises.

129.    Judge Hedge acknowledged the existence of *Threatt*, but expressed disapproval, explaining to the D.C. Court of Appeals "[w]ith trepidation and the utmost respect" the complications that arise from *Threatt* that the instant case highlights."  Judge Hedge attempted to distinguish *Threatt*, claiming it "never stated that the attack on a judgment had to come before a plaintiff filed a subsequent civil action for damages."  Yet, that is precisely what *Threatt* held.

### Application for Review of Summary Judgment Order Pursuant to D.C. Code § 11-721(d)

130.     Significantly, Judge Hedge stated in her March 23, 2012 Memorandum: "The Court agrees that it would materially advance the ultimate resolution of the case if the appeal was heard on the liability question ahead of the damages trial and so states under the D.C. Code § 11-721(d) (2001)."

131.     On April 6, 2012, WPA filed an Application for Review of the Summary Judgment in the Damages Suit pursuant to D.C. Code § 11-721(d), which states that if a judge is

> of the opinion that the ruling or order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling may materially advance the ultimate termination of the litigation or the judge shall so state in writing in the ruling . . . .

132.     Acceptance of an appeal under § 11-721(d) is discretionary.

133.     The Application, accepted for filing, was designated Appeal No. 12-DA-10.

134.     The Damages Suit was transferred on April 23, 2012, from Judge Hedge to Judge Rankin because Judge Hedge had assumed senior status.

135.     On April 30, 2012, the D.C. Court of Appeals denied the April 6, 2012 Application for Review, finding the issues "certified by the trial court do not satisfy the requirements of D. C. Code §11-721(d) (2001)."

136.     In violation of D.C. Ct. App. R. 36(b), the court failed to mail a copy of the April 30, 2012 Order to either counsel.

137.     On July 16, 2012, the Scherlises filed a pleading in the Damages Suit referring to the D.C. Court of Appeals' April 30, 2012 denial of the § 11-721(d) Application for Review, which they had apparently learned of from a D.C. Court of Appeals clerk, but had not told WPA. This was the first time WPA knew of the April 30, 2012 denial.

138.     Because the D.C. Court of Appeals Order denying WPA's Application for Review was cursory, WPA surmised that the court may have denied it on the basis the required verbatim language for D.C. Code § 11-721(d) certification was not present.

139.     D.C. Ct. App. R. 5(a)(3) expressly authorizes an applicant to request the trial judge to amend its Order certifying a ruling pursuant to § 11-721(d) to "include the prescribed" certification language.  A party may file such Motion for Clarification prior to the D.C. Court of Appeals ruling on a Petition for Rehearing.  Superior Court practice and procedure requires the Motion for Clarification be referred to the issuing judge.

140.     Therefore, on July 17, 2012, WPA filed a Motion for Clarification in the Damages Suit to request Judge Hedge to clarify her Summary Judgment Order by including verbatim the required language, and expressly requested Judge Rankin to refer the Motion to Judge Hedge for that limited purpose.

141.     On July 30, 2012, WPA filed with the D.C. Court of Appeals a Petition for Rehearing of the § 11-721(d) appeal, and sought Reissuance of the un-sent April 30, 2012 Order.

142.     On October 26, 2012, notwithstanding D.C. Ct. App. R.5(a)(3) and Superior Court practice, and that WPA's Petition for Rehearing was pending before the D.C. Court of Appeals, Judge Rankin denied WPA's request to refer the limited issue to Judge Hedge.

143.     In his Order, Judge Rankin confused WPA's Application for Review under § 11-721(d) with its Appeal of Right under § 11-721(a)(1).  The Order erroneously made it appear there was but one appeal.  In fact, there were two appeals based on different rules and separate cases: 1) the § 11-721(d) appeal of the Summary Judgment Order in the Damages Suit, which was pending because of the Petition for Rehearing, and 2) the § 11-721(a)(1) Appeal of the

Order to Vacate the Default Judgment in the Landlord-Tenant Case, which had been wrongly denied review as it was an Appeal of Right. *See* ¶¶146-160, *infra*.

144.     Although the D.C. Court of Appeals has discretion to accept appeals under § 11-721(d), the judicial system must follow its own rules and practices and the relevant statutory procedures so that the applicant has full opportunity to be heard.  Judge Rankin did not follow the prescribed procedure under D.C. Ct.  App. R. 5(a) and § 11-721(d) to have Judge Hedge clarify her recommendation to authorize an appeal.

145.     On January 8, 2013, WPA's counsel inquired of the D.C. Court of Appeals as to the status of Appeal No. 12-DA-10.  The clerk said it was "pending."  On January 31, 2013, the D.C. Court of Appeals denied the Petition for Rehearing.

### WPA's April 2012 Renewal of its 2010 Appeal of Right and also Pursuant to D.C. Court of Appeals September 9, 2010 Order

146.     Ten days after WPA filed the Application for Review of the Summary Judgment under § 11-721(d) in the Damages Suit, WPA also sought to appeal the final Order of Vacatur in the Landlord-Tenant Case, relying on § 11-721(a)(1) and the D.C. Court of Appeals' September 9, 2010 Order that "upon entry of an order that resolves all matters in the consolidation, if any party remains aggrieved, they may then file a notice of appeal."  Because of the history of confusion over case numbers, WPA attempted to file two Notices of Appeal— one in the Damages Suit and one in the Landlord-Tenant Case.

147.     On April 16, 2012, the Civil Actions Branch accepted the Notice of Appeal in the Damages Suit, which the D.C. Court of Appeals assigned Appeal No. 12-CV-539.

148.     That same day, the Landlord-Tenant Branch refused to accept the filing for the Vacating of the Default Judgment Order, stating that no appealable order had been docketed in the Landlord-Tenant Case during the previous 30 days.

149.    Consequently, on April 18, 2012, WPA amended its April 16 Notice of Appeal, to add the Landlord-Tenant Case number to the Damages Suit number.  The Amended Notice retained Appeal No. 12-CV-539.

150.    On May 9, 2012, the D.C. Court of Appeals, in a caption citing only the Damages Suitô  2008 CA 6144 Bô  issued a Show Cause Order referencing only the April 16, 2012 Notice of Appeal (and not the amended April 18 Notice of Appeal).

151.    During a status conference on May 11, 2012, Judge Rankinô  despite being informed by WPA counsel that the April 16, 2012 Notice of Appeal, as amended April 18, 2012, had been filed and therefore the trial court lacked jurisdictionô  issued a Scheduling Order.

152.    On May 29, 2012, WPA filed a Response to the May 9, 2012 D.C. Court of Appeals Show Cause Order, which detailed the history of the two cases.

153.    On May 30, 2012, WPA filed a Motion with the D.C. Court of Appeals to Stay Underlying Civil Case (Damages Suit) for the purpose of staying Judge Rankinøs exercise of jurisdiction while the appeal was pending.

154.    On July 2, 2012, a D.C. Court of Appeals panel consisting of Defendant Judges Thompson, Beckwith, and Nebeker, in an Order with a caption citing only the Damages Suitô 2008 CA 6144 Bô  dismissed the Notice of Appeal for õlack of jurisdictionö and stated the Motion to Stay [the Damages Suit] was moot.

155.    In its Order, the D.C. Court of Appeals panel, referring only to the Damages Suit, ignored the finality of Judge Hedgeøs Order Vacating the Default Judgment *ab initio* in the Landlord-Tenant Case, and cited cases holding that an interlocutory order in an ongoing case is not appealable.

156.     On July 12, 2012, WPA filed a Motion for Reconsideration of the dismissal, arguing that Judge Hedge's Order Vacating the Default Judgment *ab initio* in the Landlord-Tenant Case was final and appealable as a matter of right.  WPA further argued the Court had previously stated in its September 9, 2010 Order that, after the "consolidated" issue was decided, an "aggrieved party" may appeal.

157.     Moreover, when an order grants a Rule 60(b) Motion as void, "it is final and appealable" when "there is <u>nothing further to be decided by the district court</u>" in that action.  "Of course, <u>if the court issues an order that a judgment is void</u>, or that a judgment has been satisfied, <u>there is nothing more to be determined and those orders should . . . be final and appealable judgments</u>." Moore's Federal Practice  Civil § 60.68 (emphasis added, cross references omitted).

158.     D.C. precedent holds that where two cases are consolidated for a limited purpose, an order dismissing one of the cases is final and appealable.

159.     On July 30, 2012, the D.C. Court of Appeals, with the same panel of Defendant Judges Thompson, Beckwith, and Nebeker, issued an Order citing only the Damages Suit– 2008 CA 1644 B– which stated: "[A]ppellants' [July 12, 2012] motion for reconsideration is denied."

160.     On October 26, 2012, Judge Rankin in the same Order in the Damages Suit denying the referral to Judge Hedge for the limited purpose of specifying § 11-721(d) language, ordered that, "inasmuch as liability has been determined by Judge Hedge's [Summary Judgment] ruling, the matter will proceed to a determination of damages" in the trial court.

## COUNT I

### Plaintiff WPA was denied Due Process by Defendants, the Hon. Brook Hedge, D.C. Superior Court Senior Judge, and the Hons. Phyllis D. Thompson, Corinne A. Beckwith, and Frank Nebeker, a D.C. Court of Appeals panel.

161.    Plaintiff WPA re-alleges and incorporates here the allegations of paragraphs 1 through 160.

162.    Defendant Judge Hedge in her official capacity is a person within the meaning of 42 U.S.C. § 1983.

163.    Defendant Judges Thompson, Beckwith, and Nebeker in their official capacities are persons within the meaning of 42 U.S.C. § 1983.

164.    At all relevant times Defendant Judges Hedge, Thompson, Beckwith, and Nebeker were acting under color of law.

165.    On July 27, 2005, when the Landlord-Tenant Branch of Superior Court granted the Default Judgment and issued the Writ of Possession, Plaintiff WPA was vested with a property interest in the legal possession of Apartment #203.

166.    Ignoring clear legal precedent, Defendant Superior Court and Defendant Judge Hedge did not dismiss the Damages Suit praying for $18,500,000 and filed in August 2008 by Defendants John and William Scherlis in Superior Court against Plaintiff WPA, even though at the time of filing there was an extant and valid Default Judgment against Defendant John Scherlis.

167.    Ignoring clear legal precedent and the statutory limit of three years for bringing a damages claim, Defendant Superior Court and Defendant Judge Hedge allowed Defendants John and William Scherlis, one year past the Statute of Limitations, to pursue a Rule 60(b)(4) Motion

to Vacate the Default Judgment in the Landlord-Tenant Case when its granting permitted the Damages Suit to proceed even further past the Statute of Limitations.

168. Ignoring clear legal precedent, Defendant Superior Court and Defendant Judge Hedge granted Defendant Scherlis' Motion to Vacate the Default Judgment *ab initio* in the Landlord-Tenant Case, thereby depriving Plaintiff WPA of its property interest in the July 2005 Default Judgment for possession, all litigation expenditures, and a putative loss of an $18,500,000 jury award.

169. By ignoring clear legal precedent and the Statute of Limitations, Defendant Superior Court and Defendant Judge Hedge violated Plaintiff WPA's due process because Plaintiff WPA had no notice its actions complying with District of Columbia Code, Rules, and case law would result in deprivation of its property.

170. Defendant Superior Court's and Defendant Judge Hedge's rulings deprived and continue to deprive Plaintiff WPA of its property interest in the July 2005 Default Judgment for possession, and have cost and continue to cost Plaintiff WPA considerable litigation fees.

171. Defendant Superior Court's and Defendant Judge Hedge's rulings subject Plaintiff WPA to the potential loss of its property interest in the pleaded damages of $18,500,000.

172. D.C. Code § 11-721(a)(1) provides a right to appeal a final order.

173. Defendant Superior Court's and Defendant Judge Hedge's Order Vacating the Default Judgment *ab initio* was a final order because it completely disposed of the Landlord-Tenant Case, leaving nothing more to be done in that matter.

174. Defendant D.C. Court of Appeals and Defendant Judges Thompson, Beckwith, and Nebeker on July 2, 2012 cited the erroneous case number for the Damages Suit rather than

the number for the Landlord-Tenant Case and dismissed Plaintiff WPA's Notice of Appeal, thereby denying Plaintiff WPA's due process rights to be heard and present argument against the deprivation of its property by refusing to hear Plaintiff WPA's appeal of the final order – the Order Vacating the Default Judgment *ab initio* in the Landlord-Tenant Case.

175.     On September 9, 2010, Defendant D.C. Court of Appeals remanded the case, stating that "upon the entry of an order that resolves all matters in the consolidation, if any party remains aggrieved, they may then file a notice of appeal."

176.     Because Defendant Superior Court's and Defendant Judge Hedge's Order granting the Motion to Vacate the Default Judgment *ab initio* was the only issue "consolidated," Defendant D.C. Court of Appeals and Defendant Judges Thompson, Beckwith, and Nebeker's July 2, 2012 refusal to accept appeal of the issue also violated the court's own September 9, 2010 Order of Remand.

177.     Declaratory relief "was unavailable" within the meaning of 42 U.S.C. § 1983 because no higher court is established by the District of Columbia Court Reorganization Act of 1970 with the authority to review the D.C. Court of Appeals' refusal to hear an appeal of right.

178.     Plaintiff WPA has no adequate remedy at law because the District of Columbia court of last resort has improperly refused to accept its appeal of right and/or its appeal under Defendant D.C. Court of Appeals' own Order of Remand.

179.     Plaintiff WPA will suffer irreparable harm if it continues to be denied its right to appeal because it will be subjected to continuing legal fees and a jury verdict that could reach $18,500,000.

## COUNT II

### Plaintiff WPA was denied Due Process by Defendants, the Hons. Phyllis D. Thompson, Corinne A. Beckwith, and Frank Nebeker, a D.C. Court of Appeals panel.

180.    Plaintiff WPA re-alleges and incorporates here the allegations of paragraphs 1 through 179.

181.    Defendant D.C. Court of Appeals and Defendant Judges Thompson, Beckwith, and Nebeker, on July 30, 2012, cited the erroneous case number for the Damages Suit rather than the number for the Landlord-Tenant Case, and dismissed Plaintiff WPAøs Motion for Reconsideration, thereby denying Plaintiff WPA its due process rights to be heard and present argument against its deprivations of property interests in a valid and binding final Default Judgment.

182.    Declaratory relief õwas unavailableö within the meaning of 42 U.S.C. § 1983 because no higher court is established by the District of Columbia Court Reorganization Act of 1970 with the authority to review the D.C. Court of Appealsørefusal to hear an appeal of right.

183.    Plaintiff WPA has no adequate remedy at law because the District of Columbia court of last resort has improperly refused to accept its appeal of right and/or its appeal under Defendant D.C. Court of Appealsøown Order of Remand.

184.    Plaintiff WPA will suffer irreparable harm if it continues to be denied its right to appeal because it will be subjected to continuing legal fees and a jury verdict that could reach $18,500,000.

## COUNT III

### Plaintiff WPA was denied Due Process by Defendant, the Hon. Michael L. Rankin, Superior Court Judge.

185.     Plaintiff WPA re-alleges and incorporates here the allegations of paragraphs 1 through 184.

186.     Defendant Judge Rankin in his official capacity is a person within the meaning of 42 U.S.C. § 1983.  At all relevant times Defendant Judge Rankin was acting under color of law.

187.     On May 11, 2012, Defendant Superior Court and Defendant Judge Rankin continued the deprivation of Plaintiff WPA's due process rights when he improperly asserted jurisdiction over the Damages Suit notwithstanding that the case was pending before the D.C. Court of Appeals.

188.     On October 26, 2012, Defendant Superior Court and Defendant Judge Rankin continued the deprivation of Plaintiff WPA's due process rights when Defendant Judge Rankin confused Plaintiff WPA's Application for Review of the Summary Judgment Order in the Damages Suit with its Appeal of Right of the Order Vacating the Default Judgment *ab initio* in the Landlord-Tenant Case, refused to transfer the § 11-721(d) issue to Defendant Judge Hedge to clarify her language for appeal of her March 23, 2012 Summary Judgment Order, denied Plaintiff WPA's request to stay the proceedings of the Damages Suit, and ordered the case to proceed to a "determination of damages."

## PRAYER FOR RELIEF

Plaintiff WPA prays for judgment as follows:

1. An injunction prohibiting Defendant Superior Court and Defendant Judge Rankin from proceeding in the damages litigation in the Damages Suit until or unless Defendant D.C. Court of Appeals hears and decides the Appeal of the Order to Vacate the Default Judgment *ab initio* in the Landlord-Tenant Case.

2. An injunction prohibiting Defendants John and William Scherlis from proceeding in the damages litigation in the Damages Suit until or unless Defendant D.C. Court of Appeals hears and decides the Appeal of the Order to Vacate the Default Judgment *ab initio* in the Landlord-Tenant Case.

3. A declaration that the failure of Defendant D.C. Court of Appeals and Defendant Judges Thompson, Beckwith, Nebeker, to hear and decide the Appeal of the Order to Vacate the Default Judgment *ab initio* in the Landlord-Tenant Case violated Plaintiff WPA¨s due process rights.

4. Such other relief as this Court deems just and proper.

Respectfully submitted,

WILLIAM PENN APARTMENTS, L.P.

DATED:  February 8, 2013          By:  _____

Victoria Toensing, DC Bar # 304980
Joseph E. diGenova, DC Bar # 73320
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)
Counsel for Plaintiff