UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

_____
                              )
**WILLIAM PENN APARTMENTS,**    )
                              )
    **Plaintiff,**         )
                              )
    **v.**                )   **Civil Action No. 13-178 (RWR)**
                              )
**DISTRICT OF COLUMBIA COURT**  )
**OF APPEALS, et al.,**         )
                              )
    **Defendants.**        )
_____)


                    **MEMORANDUM OPINION AND ORDER**

    Plaintiff William Penn Apartments ("WPA") brings suit under 42 U.S.C. § 1983 against D.C. Court of Appeals Judges Phyllis D. Thompson, Corinne A. Beckwith, and Frank Q. Nebeker, and D.C. Superior Court Judges Brook Hedge and Michael L. Rankin ("judicial defendants"), as well as John S. Scherlis and William L. Scherlis ("Scherlis defendants").[1]  The defendants move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction, for failure to state a claim, and on Younger[2] abstention grounds. WPA's claim for § 1983 injunctive relief will be dismissed for

---

[1] Plaintiff's complaint names as defendants the D.C. Court of Appeals and the D.C. Superior Court.  Because these institutions are non sui juris, the claims against them will be dismissed.  See Hoai v. Superior Court of Dist. of Columbia, 539 F. Supp. 2d 432, 435 (D.D.C. 2008).

[2] Younger v. Harris, 401 U.S. 37 (1971).

failure to state a claim.  However, the Rooker-Feldman[3] doctrine and Younger abstention do not bar WPA's claim for declaratory relief.  Thus, the defendants' motions to dismiss will be granted in part and denied in part.

## BACKGROUND

From 1994 to 2004, defendant John Scherlis leased three apartments from WPA.  Compl. ¶ 27.  In 2005, WPA brought a suit (the "landlord-tenant case") in D.C. Superior Court against Scherlis for non-payment of rent, obtained a default judgment against him, and evicted him from one of the apartments.  Id. ¶¶ 48-54, 67.

In August 2008, the Scherlis defendants filed suit (the "damages case") in D.C. Superior Court against WPA and Cafritz Company, alleging wrongful eviction, negligence, breach of good faith, and trespass, and seeking $18.5 million in damages.  Id. ¶ 69.  Also, John Scherlis moved to vacate the 2005 default judgment in the landlord-tenant case.  Id. ¶ 75.  Judge Hedge consolidated the landlord-tenant and damages cases and vacated the 2005 default judgment in the landlord-tenant case.  Id. ¶¶ 95, 102.  WPA appealed, and the D.C. Court of Appeals sua sponte remanded the case to the trial court.  Id. ¶¶ 110, 123. The Court of Appeals' September 9, 2010 order stated that "upon

---

[3] Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., et al., 263 U.S. 413 (1923).

the entry of the order that resolves all matters in the consolidat[ed cases], if any party remains aggrieved, then they [sic] may file a notice of appeal." Id. ¶ 123 (emphasis omitted).  On remand, Judge Hedge granted partial summary judgment to the Scherlis defendants in the damages case.  Id. ¶¶ 125-26.  WPA filed an application for review of Judge Hedge's grant of partial summary judgment in the damages case, which the D.C. Court of Appeals denied.  Id. ¶¶ 131, 135.  WPA appealed the order vacating the default judgment in the landlord-tenant case. Id. ¶ 146.  Judges Thompson, Beckwith, and Nebeker dismissed the appeal.  Id. ¶ 154.  WPA moved for reconsideration, which Judges Thompson, Beckwith, and Nebeker denied.  Id. ¶ 159.  In October 2012, Judge Rankin denied WPA's request to refer the damages litigation to Judge Hedge and ordered the case to proceed.  Id. ¶¶ 160, 188.

   WPA asserts that procedural and legal errors infected the entire litigation process in the landlord-tenant and damages cases and that the judicial defendants committed multiple due process violations.  See id. ¶¶ 113, 136, 143-44, 169.  WPA claims that Judge Hedge erred by failing to dismiss the damages case, allowing the Scherlis defendants to move to vacate the default judgment in the landlord-tenant case, and vacating the default judgment in the landlord-tenant case.  Id. ¶¶ 166-71. WPA further claims that Judges Thompson, Beckwith, and Nebeker denied WPA due process by declining to hear WPA's interlocutory

-4-

appeal of Judge Hedge's order vacating the default judgment in the landlord-tenant case.  Id. ¶¶ 174-76.  WPA also alleges that Judges Thompson, Beckwith, and Nebeker violated its due process rights by denying its motion for reconsideration.  Id. ¶¶ 181-84.  Finally, WPA alleges that Judge Rankin denied WPA due process by failing to transfer the damages case to Judge Hedge to "clarify her language for appeal" of her summary judgment order and proceeding with the damages case.  Id. ¶¶ 186-88.

WPA brought this suit in federal court seeking a declaration that Judges Thompson, Beckwith, and Nebeker's failure to hear the appeal in the landlord-tenant case deprived WPA of due process and an injunction to prohibit Judge Rankin and the Scherlis defendants from proceeding in the damages case until the D.C. Court of Appeals decides the appeal in the landlord-tenant case.  Id. at 35.  The defendants move to dismiss the complaint under Rules 12(b)(1) and (12)(b)(6), contending that WPA's suit is barred under the Rooker-Feldman doctrine and that the judicial defendants are immune from claims for injunctive relief.  Scherlis Defs.' Mot. to Dismiss at 3-7; Judicial Defs.' Mot. to Dismiss Pl.'s Compl. at 7-11.  The judicial defendants also argue that Younger abstention precludes federal adjudication.  Judicial Defs.' Mot. to Dismiss Pl.'s Compl. at 11-13.  WPA opposes the defendants' motions arguing that the Rooker-Feldman doctrine does not apply to state court interlocutory decisions, that the judicial defendants are not immune because declaratory relief was

unavailable, and that <u>Younger</u> abstention does not apply because this case does not implicate important state interests. Pl.'s Opp'n to Judicial Defs.' Mot. to Dismiss ("Pl.'s Opp'n to Jud. Defs.") at 5-17.

<u>DISCUSSION</u>

I. MOTION TO DISMISS UNDER RULE 12(b)(1)

Jurisdiction is a threshold issue which ordinarily must be addressed before the merits of the case are reached. <u>See</u> <u>Haase v. Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987); <u>Walsh v. Hagee</u>, 900 F. Supp. 2d 51, 55 (D.D.C. 2012). Rule 12(b)(1) provides that a federal court must dismiss the case when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden to establish that jurisdiction is proper. <u>Araya v. Bayly</u>, 875 F. Supp. 2d 1, 3 (D.D.C. 2012) (citing <u>Georgiades v. Martin-Trigona</u>, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984)). "Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because once a court determines that it lacks subject matter jurisdiction, it can proceed no further." <u>Center for Biological Diversity v. Jackson</u>, 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (internal quotation marks and alterations omitted); <u>see</u> 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350 (3d ed. 2004).

Federal district courts have jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United

-6-

States[,]" 28 U.S.C. § 1331, and over civil actions "to secure equitable or other relief under any Act of Congress providing for the protection of civil rights[.]"  28 U.S.C. § 1343(a)(4). Another statute, 42 U.S.C. § 1983, provides a federal cause of action for the deprivation of constitutional rights.

Under the Rooker-Feldman doctrine, the Supreme Court exercises exclusive jurisdiction over appeals from the highest state courts.  See Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); 28 U.S.C. § 1257.  Thus, lower federal courts do not possess jurisdiction to review such appeals even if the plaintiffs allege a constitutional injury.  See Hunter v. U.S. Bank Nat'l Ass'n, 698 F. Supp. 2d. 94, 99 (D.D.C. 2010).  In addition, "the [Rooker-Feldman] doctrine 'prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court,' . . . and that the doctrine extends to review of District of Columbia courts[.]" Araya, 875 F. Supp. 2d at 3 (quoting Gray v. Poole, 275 F.3d 1113, 1119 (D.C. Cir. 2002)) (citing Richardson v. Dist. of Columbia Court of Appeals, 83 F.3d 1513, 1514 (D.C. Cir. 1996)). However, the Supreme Court has recognized that the Rooker-Feldman jurisdictional bar is limited to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

-7-

inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Before Exxon Mobil, the D.C. Circuit stated that the Rooker-Feldman doctrine barred lower federal court review of interlocutory appeals from state courts. Richardson, 83 F.3d at 1514. In Richardson, the plaintiff challenged an order from the D.C. Court of Appeals that temporarily suspended him from the practice of law. Id. He characterized the suspension order as an "interlocutory" order for which federal lower court review was available under the Rooker-Feldman doctrine. Id. Although the D.C. Circuit found that the state court proceedings in that case had resulted in a final decision, it opined that

> [e]ven if the suspension were not final for purposes of 28 U.S.C. § 1257, the district court would have lacked jurisdiction. We cannot imagine how one could reconcile Feldman's reasoning, based as it is on allowing state courts to arrive at decisions free from collateral federal attack, with the idea that the district court would be free to review Richardson's suspension so long as the decision was *interlocutory*. Indeed, other circuits have persuasively concluded that the boundaries of § 1257's grant of Supreme Court jurisdiction do not prevent the application of Rooker-Feldman to the final decisions of *lower* state courts, or to state courts' interlocutory decisions.

Id. at 1515. However, Exxon Mobil emphasized that the Rooker-Feldman doctrine can be applied only in "limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction

-8-

in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]" Exxon Mobil, 544 U.S. at 291. In particular, the Supreme Court stated that both Rooker and Feldman involved "the losing party in state court fil[ing] suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. As here, "plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment." Id. at 291-92. However, Exxon Mobil stated that "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Id. at 292 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). While Exxon Mobil recognized that comity and abstention doctrines may allow the federal court to stay or dismiss an action while related proceedings are pending in a state court, the Supreme Court held that the Rooker-Feldman doctrine is limited to cases where the losing party in state court seeks review of the state-court judgments which were "rendered before the district court proceedings commenced[.]" Id. at 282-84.

Since Exxon Mobil, courts have interpreted Exxon Mobil to have abrogated Richardson's holding in that the post-Exxon Mobil Rooker-Feldman doctrine applies only to final decisions after the state proceedings ended and does not apply to appeals of

-9-

interlocutory orders.  See In re Hodges, 350 B.R. 796, 799-801 (N.D. Ill. 2006) ("For Rooker-Feldman to apply, the state court proceedings must have 'ended,' . . . producing 'state-court losers,' . . . before the federal action begins.  And because the state proceeding must have ended, the Rooker-Feldman doctrine necessarily poses no jurisdictional bar to a federal action attacking an interlocutory state court order." (footnote omitted) (quoting Exxon Mobil, 544 U.S. at 284, 291)).  Similarly, the First Circuit stated that Exxon Mobil held that "[i]f federal litigation is initiated *before* state proceedings have ended, then . . . the Rooker-Feldman doctrine does not deprive the [federal] court of jurisdiction. . . .  On the other hand, if federal litigation is initiated *after* state proceedings have ended, . . . the federal courts lack jurisdiction."  Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24 (1st Cir. 2005) (citation omitted).  Federación then defined when "state proceedings have ended" for the purposes of the Rooker-Feldman doctrine:

> First, when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved[.]  . . .  Second, if the state action has reached a point where neither party seeks further action[.]  . . .  Third, if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated[.]

Id. at 24-25.  Although the D.C. Circuit has not addressed this issue after Exxon Mobil, the Eighth, Ninth, Tenth, and Eleventh

Circuits have relied on the Federación analysis to hold that the Rooker-Feldman doctrine applies only to cases where the state proceedings have ended.  See Nicholson v. Shafe, 558 F.3d 1266, 1278-79 (11th Cir. 2009); Guttman v. Khalsa, 446 F.3d 1027, 1032 & n.2 (10th Cir. 2006); Dornheim v. Sholes, 430 F.3d 919, 924 (8th Cir. 2005); Mothershed v. Justices of Supreme Court, 410 F.3d 602, 604 n.1 (9th Cir. 2005).

Here, WPA brings this § 1983 action for declaratory and injunctive relief asserting jurisdiction under 28 U.S.C. §§ 1331, 1343, Compl. ¶ 10, and arguing that the judicial defendants denied WPA's constitutional due process rights.  Compl. ¶¶ 161-88.  WPA contends that jurisdiction here is proper under the Rooker-Feldman doctrine because it seeks review not of a final judgment by the D.C. Court of Appeals, but rather of an interlocutory appeal.  See Pl.'s Opp'n to Jud. Defs. at 11.  The judicial defendants counter that because the animating spirit of the Rooker-Feldman doctrine is aimed at prohibiting lower federal courts from intruding on state court proceedings, it would be doctrinally inconsistent to allow review of interlocutory appeals.  See Judicial Defs.' Reply in Supp. of their Mot. to Dismiss Pl.'s Compl. ("Jud. Defs.' Reply") at 3-4.

Previously, in Richardson, the D.C. Circuit held that the Rooker-Feldman doctrine precluded review of interlocutory orders from state courts.  Richardson, 83 F.3d at 1515.  Since Exxon Mobil, the D.C. Circuit has not considered whether the Rooker-

Feldman doctrine bars lower federal courts from such review. However, this action has not arisen when state proceedings have "ended" under the Federación analysis. There is no judgment for the D.C. Court of Appeals to affirm, the action has not "reached a point where neither party seeks further action," and there were no federal questions in the litigation to resolve. See Federación, 410 F.3d at 24. Because state proceedings had not ended, the Rooker-Feldman doctrine presents no bar to WPA's having filed suit. Thus, the defendants' motion to dismiss on Rooker-Feldman grounds will be denied.

II. MOTION TO DISMISS UNDER RULE 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "'A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.'" Maib v. F.D.I.C., 771 F. Supp. 2d 14, 17 (D.D.C. 2011) (quoting Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 129 (D.D.C. 2009)).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) and citing Twombly, 550 U.S. at 556). A court may dismiss under Rule 12(b)(6) a complaint against a judge that alleges injury caused

by official judicial acts.  <u>Hoai v. Superior Court of Dist. of Columbia</u>, 539 F. Supp. 2d 432, 435 (D.D.C. 2008).

In this case, WPA seeks to enjoin the ongoing damages case "until or unless Defendant D.C. Court of Appeals hears and decides the Appeal of the Order to Vacate the Default Judgment *ab initio* in the Landlord-Tenant Case."  Compl. at 35.  WPA also seeks a declaration that Judges Thompson, Beckwith, and Nebeker denied WPA due process.  <u>Id.</u>  Thus, WPA seeks both injunctive and declaratory relief in this suit.

Here, the plaintiff fails to state a claim for injunctive relief under 42 U.S.C. § 1983.  That statute provides that

> in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  "[A] failure to get one's desired decisions in our local courts does *not* constitute such 'unavailablity'" of declaratory relief.  <u>Hoai</u>, 539 F. Supp. 2d at 435 (dismissing suit against judges on D.C. Superior Court and D.C. Court of Appeals wherein plaintiff challenged those courts' previous unfavorable judicial decisions).  A party that begins litigation in D.C. Superior Court may "appeal an adverse decision to the District of Columbia Court of Appeals, and if still dissatisfied seek review in the United States Supreme Court."  <u>JMM Corp. v. Dist. of Columbia</u>, 378 F.3d 1117, 1121 (D.C. Cir. 2004) (footnotes omitted).

-13-

WPA argues that declaratory relief was unavailable because "no higher court is established by the District of Columbia Court Reorganization Act of 1970 with the authority to review the D.C. Court of Appeals' refusal to hear an appeal of right." Compl. ¶ 177. The judicial defendants respond that it is "far from clear that WPA will never have a right to appeal the order vacating the default judgment in the Landlord-Tenant Case," and it is "possible that the Court of Appeals will eventually rule on the merits of WPA's appeal[.]" Jud. Defs.' Reply at 5. Moreover, they argue, WPA could have obtained declaratory relief by appealing to the Supreme Court. Id. at 3.

The D.C. Court of Appeals' decision to decline WPA's appeal does not make declaratory relief unavailable because WPA could have petitioned for a writ of certiorari in the Supreme Court under 28 U.S.C. § 1257. See JMM Corp., 378 F.3d at 1121. Furthermore, the D.C. Court of Appeals explicitly left open the possibility of future declaratory relief in its September 9, 2010 order by stating that WPA may appeal "upon entry of the order that resolves all matters in the consolidat[ed cases.]" See Compl. ¶ 123 (emphasis omitted).

Because declaratory relief was not unavailable, and the challenged actions were official acts by the judges in their judicial capacity, the judicial defendants are immune from suit under 42 U.S.C. § 1983. Thus, WPA's claim for injunctive relief will be dismissed for failure to state a § 1983 claim.

-14-

The defendants also move to dismiss the plaintiff's § 1983 claim for declaratory relief on Younger abstention grounds. "In Younger v. Harris and its progeny, the Supreme Court held that, except in extraordinary circumstances, a federal court should not enjoin a pending state proceeding . . . that is judicial in nature and involves important state interests." JMM Corp., 378 F.3d at 1120 (citations omitted). The doctrine is grounded in the "'vital consideration' of the proper respect for the fundamental role of States in our federal system." Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 626 (1986) (quoting Younger v. Harris, 401 U.S. 37, 44 (1971)). The Younger doctrine cautions against the exercise of jurisdiction by lower federal courts over proceedings in D.C. Superior Court and the D.C. Court of Appeals. JMM Corp., 378 F.3d at 1122. "Younger precludes federal adjudication where three criteria are met: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise the federal claims." Delaney v. Dist. of Columbia, 659 F. Supp. 2d 185, 194 (D.D.C. 2009) (citing Bridges v. Kelly, 84 F.3d 470, 476 (D.C. Cir. 1996)). Property regulations implicate important state interests that warrant Younger abstention. See, e.g., Harper v. Pub. Serv. Comm'n of W. Va., 396 F.3d 348, 352 (4th Cir. 2005) ("[P]roperty law concerns, such as land use and zoning questions, are frequently 'important' state interests

justifying <u>Younger</u> abstention."); <u>JMM Corp.</u>, 378 F.3d at 1128 (holding that a district court decision to decline review of District of Columbia zoning regulations barring adult bookstore was proper under <u>Younger</u>); <u>Carroll v. City of Mount Clemens</u>, 139 F.3d 1072, 1075 (6th Cir. 1998) (holding that the state interest in enforcing housing codes was sufficiently important to justify <u>Younger</u> abstention); <u>Rumber v. Dist. of Columbia</u>, 598 F. Supp. 2d 97, 111 (D.D.C. 2009) (holding that eminent domain proceedings are an important state interest for <u>Younger</u> analysis).  However, eviction proceedings, particularly between private parties, do not generally implicate a state interest that is sufficiently important for a district court to abstain from hearing a case on <u>Younger</u> grounds.  See <u>Logan v. U.S. Bank Nat'l Ass'n</u>, 722 F.3d 1163, 1169 (9th Cir. 2013).  There, the Ninth Circuit found that other courts' decisions which invoked <u>Younger</u> abstention based on state-court eviction proceedings

> fall prey to the logic that the state has a significant concern simply because property law, including eviction, has long been a state concern.  The difficulty with this assumption is that it would require federal courts to abstain from state litigation in virtually every area of state law -- from consumer protection to real estate -- even where the dispute is purely private.  We agree with the Third Circuit that the regulation of eviction proceedings "does not implicate an important state interest" under <u>Younger</u>.

<u>Id.</u> (citing <u>Ayers v. Phila. Hous. Auth.</u>, 908 F.2d 1184, 1195 n.21 (3d Cir. 1990)).

-16-

Here, the parties agree that the ongoing state proceedings are judicial in nature.  See Judicial Defs.' Mot. to Dismiss Pl.'s Compl. at 13; Pl.'s Opp'n to Jud. Defs. at 15.  WPA argues that the Younger doctrine is inapplicable because the District of Columbia has no important "state interest" in barring federal jurisdiction over landlord-tenant issues and the ongoing litigation does not afford WPA an adequate opportunity to raise its federal claims.  Pl.'s Opp'n to Jud. Defs. at 16.  The judicial defendants counter that the District of Columbia has an important interest in "administering its landlord-tenant law" and that WPA "can raise its claims in the ongoing Superior Court proceeding, or on appeal in the Court of Appeals after a final, appealable order has been issued by the Superior Court." Judicial Defs.' Mot. to Dismiss Pl.'s Compl. at 13.

The defendants have not shown that Younger abstention applies.  Although the ongoing judicial proceedings involve the District of Columbia's interest in maintaining and administering landlord-tenant relations, this interest, by itself, does not justify Younger abstention.  The ongoing court proceedings between the Scherlis defendants and WPA is "garden variety civil litigation" and implicates no important state interest that would justify Younger abstention here.  See Logan, 722 F.3d at 1168.  Moreover, the defendants do not demonstrate that the District of Columbia has any special interest in the eviction proceedings that would justify this court's abstention.  See id.  Therefore,

-17-

<u>Younger</u> abstention does not bar consideration of the plaintiff's § 1983 claim for declaratory relief.

## CONCLUSION AND ORDER

After <u>Exxon-Mobil</u>, the <u>Rooker-Feldman</u> doctrine does not preclude lower federal courts from reviewing interlocutory state court decisions.  However, the judicial defendants are immune from suit for injunctive relief under 42 U.S.C. § 1983.  Thus, the plaintiff's § 1983 claim for injunctive relief will be dismissed for failure to state a claim.  However, the plaintiff's § 1983 claim for declaratory relief is not barred by <u>Younger</u> abstention.  Accordingly, it is hereby

ORDERED that the defendants' motions [6, 8] be, and hereby are, GRANTED in part and DENIED in part.  The plaintiff's § 1983 claim for injunctive relief is dismissed, but the plaintiff's claim for declaratory relief remains.

SIGNED this 14th day of April, 2014.

                                            /s/
                                   RICHARD W. ROBERTS
                                   Chief Judge